Sullivan
No. 2003-514

IN THE MATTER OF DENISE ANGLEY-COOK
AND JOHN W. COOK

Argued: June 9, 2004
Opinion Issued: July 16, 2004

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the petitioner.

*Feeney Law Offices,* of Newport (*Catherine A. Feeney* on the brief and orally), for the respondent.

DALIANIS, J. The respondent, John W. Cook, appeals an order of the Superior Court (*Burling,* J.) ordering him to pay $659.00 per month under the child support guidelines and refusing to give him credit for monthly payments of $762.00 in Social Security retirement dependency benefits received by the petitioner, Denise Angley-Cook, on their child's behalf. We vacate and remand.

The parties divorced in 1993, with the petitioner retaining custody of their minor child. When the respondent turned sixty-five he began receiving Social Security retirement benefits and the petitioner began receiving Social Security retirement dependency benefits as payee on their child's behalf. In 2002, the respondent petitioned the court to modify his child support obligation and pointed to the fact that the petitioner receives his Social Security retirement dependency benefits. He asked the court to give him a dollar-for-dollar credit for those benefits. The court ordered the respondent to pay $659.00 per month under the child support guidelines, and refused to consider the monthly payments of $762.00 in dependency benefits.

On appeal, the respondent argues that he should receive a dollar-for-dollar credit for those benefits under RSA chapter 458-C (1992 & Supp. 2003). We agree.

We review the trial court's interpretation of a statute *de novo*. *Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002). In cases of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *State v. McCarthy*, 150 N.H. 389, 390 (2003). We ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise. *Id.*

The respondent currently receives monthly Social Security retirement benefits from the Social Security Administration. The petitioner, as the custodial parent, receives a monthly payment on her child's behalf directly from the Social Security Administration in the form of Social Security retirement dependency benefits. "These payments are referred to as 'children's insurance benefits'; they are an integral part of [the respondent's] social security retirement benefits, and [the child's] entitlement to them derives from [the respondent's] eligibility [for] and past participation in the social security program." *Miller v. Miller*, 890 P.2d 574, 576 (Alaska 1995); *see* 42 U.S.C. § 402(d)(2) (2000).

RSA 458-C:2, II provides that a parent's "child support obligation" "means the proportion of total support obligation which the obligor parent is ordered to pay in money to the obligee parent as child support." RSA chapter 458-C does not define what constitutes a payment in money, however, and it is not clear from the plain meaning of the statute whether a monthly payment that an obligee parent receives in the form of a dependency benefit constitutes a payment in money for the purposes of satisfying the obligor parent's child support obligation. When the language of a statute is ambiguous, we construe it in light of the legislature's intent in enacting it, and in light of the policy sought to be advanced by the entire statutory scheme. *McCarthy*, 150 N.H. at 391.

■ Although we have not yet addressed the issue of whether Social Security retirement dependency benefits received by a custodial parent should be credited against a noncustodial parent's child support obligation, "[t]he overwhelming majority of states that have considered this issue allow a credit for Social Security benefits paid to dependent children." *Pontbriand v. Pontbriand*, 622 A.2d 482, 484 (R.I. 1993); *see also Rosenberg v. Merida*, 697 N.E.2d 987, 990 (Mass. 1998); *Miller*, 890 P.2d at 576. While some cases that have dealt with Social Security dependency benefits have done so in the context of Social Security Disability Income dependency benefits, we see "no reason to treat retirement benefits any

differently than disability benefits." *Miller*, 890 P.2d at 577 (analyzing retirement dependency benefits); *see also Rosenberg*, 697 N.E.2d at 990 n. 4 (analyzing disability income dependency benefits). We choose to follow the majority of States and allow the obligor credit for his or her child support obligation as a *per se* rule. *See Rosenberg*, 697 N.E.2d at 990. We find persuasive, as the rationale for this position, that:

> [U]nlike welfare and other forms of public assistance, social security benefits represent contributions that a worker has made throughout the course of employment . . . .
>
> . . . Although the benefits are payable directly to the child rather than through the contributing parent, the child's entitlement to payments derives from the parent, and the payments themselves represent earnings from the parent's past contributions.

*Miller*, 890 P.2d at 576-77; *see also Rosenberg*, 697 N.E.2d at 990. Allowing a credit to the noncustodial parent is not detrimental to the interests of the dependent child or children because once the proper support amount is determined under the guidelines, the actual source of the payments should be of no concern to the custodial parent, so long as the payments are actually made. *Rosenberg*, 697 N.E.2d at 990-91. Therefore, we find that Social Security retirement dependency benefits constitute a payment in money for the purposes of satisfying the obligor parent's child support obligation under RSA 458-C:2, II.

■ Furthermore, the court shall consider the dependency benefits as *gross income to the respondent* when calculating his child support obligation. RSA 458-C:2, IV defines "gross income" as "all income *from any source*," and explicitly lists social security benefits in the items that are to be included in income. RSA 458-C:2, IV (emphasis added); *cf. Rosenberg*, 697 N.E.2d at 991. As the petitioner states in her brief, "[T]he Legislature constructed a system based on parent's current income." "It thus seems clear that the guidelines contemplate that the [Social Security retirement dependency benefits] should be included in the income of one parent or the other." *Rosenberg*, 697 N.E.2d at 991. We agree with the Massachusetts Supreme Judicial Court that "[t]he fairest approach for calculating the credit here is to treat the . . . dependency benefits as if they were first paid directly to the noncustodial parent, who then pays that same amount to the custodial parent to satisfy some part of the support obligation." *Id.* at 991.

We note that even if we were to decide that the Social Security retirement dependency benefits are not Social Security benefits as listed

in the statute, they would nonetheless qualify as an "other government program," *see* RSA 458-C:2, IV, under the "gross income" provision of the child support guidelines, that is not specifically excluded as a "public assistance program" because such benefits are not based upon a means-test. *See In the Matter of Hennessey-Martin & Whitney*, 151 N.H. 207, 210-11 (2004); *Mathews v. De Castro*, 429 U.S. 181, 185-86 (1976) ("The old-age and disability insurance aspects of the Social Security system do not purport to be general public assistance laws that simply pay money to those who need it most .... Rather, the primary objective [is] to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age.").

■ Thus, "the amount of the ... dependency benefits should be included in the income of the noncustodial parent and the guidelines should then be applied to that amount." *Rosenberg*, 697 N.E.2d at 991; *see also Miller*, 890 P.2d at 578. The noncustodial parent is then allowed a credit equal to the amount of the dependency benefits, and the net amount of the noncustodial parent's support obligation is the difference between the support amount determined by the court to be correct under the guidelines minus the amount of the credit. *See Rosenberg*, 697 N.E.2d at 991. An exception exists if the support amount determined by the court to be correct under the guidelines is less than the dependency benefits. *See id.* at 991 n.7 "In such case, the total support obligation is simply equal to the amount of the ... dependency benefits, and the noncustodial parent would not owe any additional amount." *Id.*

We find the petitioner's argument regarding the federal anti-alienation provision, *see* 42 U.S.C. § 407(a) (2000), to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

We vacate the trial court's order and remand for findings not inconsistent with this opinion.

*Vacated and remanded.*

NADEAU, DUGGAN and GALWAY, JJ., concurred; BRODERICK, C.J., dissented.

BRODERICK, C.J., dissenting. Because I believe that Social Security retirement dependency benefits should neither be included in the respondent's gross income when calculating his child support obligation, nor automatically constitute a credit against his child support obligation under RSA 458-C:2, II (1992), I respectfully dissent.

By statute, trial courts are required to utilize the child support guidelines when calculating child support. RSA 458-C:4, I (1992). The first

step in calculating child support is to determine each parent's gross income, which is defined as:

> all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses, and payments from other government programs (except public assistance programs, including aid to families with dependent children, aid to the permanently and totally disabled, supplemental security income, food stamps, and general assistance received from a county or town), including, but not limited to, workers' compensation, veterans' benefits, unemployment benefits, and disability benefits.

RSA 458-C:2, IV (1992). The guidelines make clear that child support is calculated according to the parents' incomes. *See In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 525 (2003). The guidelines do not include the child's income in the calculation of a parent's child support obligation, *see* RSA 458-C:2, :3 (Supp. 2003), although the child's income may be a relevant consideration in departing from the guidelines, *see* RSA 458-C:4 (1992), :5 (Supp. 2003).

In this case, the dependency benefits do not fall within the broad range of items that the legislature included in the definition of a parent's gross income. The examples provided by the legislature evince a clear intent to calculate gross income based upon items that increase the respondent's ability to pay child support, with the notable exception of public assistance programs. Although the dependency benefits at issue here may potentially relieve the respondent of some portion of his child support obligation, because they resulted from his past labor, they do not increase the means by which he can satisfy his current child support obligation. Gross income properly includes social security benefits received by the respondent, but does not encompass social security benefits paid to, or on behalf of, the respondent's child. Likewise, gross income includes payments to the respondent from "other government programs" such as "workers' compensation, veterans' benefits, unemployment benefits, and disability benefits," but not similar payments to his child. Accordingly, I agree with those courts that have reasoned as follows:

> Here, the children receive benefits pursuant to [the social security benefit statute], because they are dependents of a disabled person. Benefits under that statute may be paid either

> directly to the child beneficiary or to another individual as "representative payee" to administer the funds for the child's use and benefit. The representative payee must use the money exclusively for the child in accordance with federal guidelines and must hold any excess in trust for the child's later use. Thus, the benefits the parties receive for their children are financial assets or income of the children, not "gross income" of the parents . . . .

*Lawhorn and Lawhorn,* 850 P.2d 1126, 1128 (Or. Ct. App. 1993) (citations omitted); *see Drummond v. State,* 714 A.2d 163, 168-70 (Md. 1998) (holding that social security dependency benefits are not included in calculation of parents' gross incomes); *Graby v. Graby,* 664 N.E.2d 488, 490-91 (N.Y. 1996) (same); *Wood v. Wood,* 964 P.2d 1259, 1264 (Wyo. 1998) (same).

Moreover, under the New Hampshire child support guidelines, there is no provision authorizing a trial court to automatically grant a credit against a parent's child support obligation for dependency benefits received by the child. RSA 458-C:4 provides the only method by which a trial court may depart from the presumptively correct child support award calculated in accordance with the guidelines: "A written finding or a specific finding by the presiding officer on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined by using the criteria set forth in RSA 458-C:5, shall be sufficient to rebut the presumption . . . ."

While I believe that a trial court may consider social security dependency benefits paid directly to, or on behalf of, a child when determining whether to deviate from the guidelines under RSA 458-C:5, *see Griffin v. Avery,* 120 N.H. 783, 787-88 (1980) (holding, prior to enactment of child support guidelines, that trial court had discretion to allow credit against arrearage for social security disability dependency benefits); *Stultz v. Stultz,* 659 N.E.2d 125, 128 (Ind. 1995) (trial court has discretion to grant credit for dependency benefits depending on facts of case); *Drummond,* 714 A.2d at 170-75 (same); *Graby,* 664 N.E.2d at 491 (same); *Lawhorn,* 850 P.2d at 1127-28 (same), the guidelines do not permit the trial court to simply reduce, according to a judicially created *per se* rule, the respondent's child support obligation without making the factual findings required by RSA 458-C:4. Although a credit against a parent's child support obligation may be appropriate in many cases because the dependency benefits, earned by the obligor parent through his or her past labor, effectively serve as a substitute for child support, I believe we must adhere to the statutory scheme enacted by the legislature, which leaves such a determination to the discretion of the trial court depending on the facts of a particular case.